UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

November 29, 2010

TO ALL COUNSEL OF RECORD

      Subject: *David W. Schweinfurth v. Michael J. Astrue, Comm'r of Social Security*
              Civil Action No.: JKB-10-634

Dear Counsel:

      On March 12, 2010, the Plaintiff, Mr. David W. Schweinfurth, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) I have considered the parties' cross-motions for summary judgment (ECF Nos. 14 & 16), as well as Plaintiff's reply (ECF No. 17), and I find that no hearing is necessary, Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I am reversing the agency's decision, and I am writing this letter to explain my rationale.

Background

      The Appeals Council denied Mr. Schweinfurth's request for review (Tr. 1-3), so the decision of the Administrative Law Judge ("ALJ") is the final, reviewable decision of the agency. Mr. Schweinfurth's benefits applications were based upon his claim of disability due to injuries he received in a motor vehicle accident on December 13, 2006. (Tr. 54, 109, 111.) His claim was denied initially and upon reconsideration. (Tr. 54-57.) The claim was amended to request a closed period of disability from December 13, 2006, to December 20, 2007. (Tr. 237.) In his written decision, the ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2012. (Tr. 8.) The ALJ determined that Plaintiff had, during the relevant time period, the following severe impairments: left knee anterior cruciate ligament ("ACL"), medial collateral ligament ("MCL"), and posterior cruciate ligament ("PCL") tears and subsequent repair as well as fracture of the first metatarsal of the right foot and subsequent repair. (Tr. 10.) He further determined that the bilateral deep venous thrombosis ("DVT") Plaintiff suffered in his lower extremities was resolved by April 2007 and, therefore, did not constitute an impairment lasting twelve months. (Tr. 11.) The ALJ found that Mr. Schweinfurth's impairments did not satisfy the criteria of the Listing of Impairments ("LOI") because the evidence showed no gross anatomical deformity of the left knee or the right foot. (Tr. 11). The ALJ determined that Plaintiff's residual functional capacity ("RFC") allowed him

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[1] but with the following limitations during the relevant period:

> [H]e was able to lift up to ten pounds occasionally; lift or carry a negligible amount of weight frequently as defined by the regulations. He must have been allowed to sit or stand at will, provided he was not off task more than 10% of the time. He may have occasionally climbed ramps and stairs, and engaged in activities requiring bending, stooping, crouching, and balancing, but may never have climbed ladders, ropes, or scaffolds, or engaged in activities requiring crawling or kneeling. He must have avoided concentrated exposure to extreme cold and to hazards such as moving machinery and heights.

(Tr. 11.) To the extent that Mr. Schweinfurth's testimony was inconsistent with the RFC, the ALJ concluded that his statements about the intensity, persistence, and limiting effects of his symptoms were not credible. (Tr. 12-13.) The ALJ concluded that Plaintiff had no past relevant work; subsequent to the relevant period, Mr. Schweinfurth obtained work as an editor.[2] (Tr. 14.) Based on the testimony of a vocational expert that an individual with Mr. Schweinfurth's RFC would be able to perform several jobs available in the national economy, the ALJ concluded he was not disabled from December 13, 2006, to December 20, 2007. (Tr. 14.)

Plaintiff has raised three issues:

1. The ALJ plainly erred in determining the claimant's severe medical impairments.

2. The ALJ failed to consider the claimant's nonexertional limitations in the form of pain and need to elevate his left leg during the day.

3. The ALJ's finding that the claimant is not credible is not supported by substantial evidence.

---

[1] "Sedentary work" is defined as that which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Further, the regulation notes, "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

[2] At the time of his accident, Mr. Schweinfurth was teaching English as a second language to young children in Taiwan. (Tr. 23-24.) He had been in that position for seven months. (Tr. 24.) Before that job, Mr. Schweinfurth's benefits applications indicated that he had begun working at approximately age 15 in various jobs, apparently while he was in high school and college. (Tr. 158.) These jobs included positions as a cashier, as a waiter and bartender, and as a page in the U.S. House of Representatives. (*Id.*) He obtained his college degree, majoring in philosophy. (Tr. 24.)

(Pl.'s Br. 16-20, ECF No. 14.)

Issue 1:  Determination of Severe Medical Impairments

Mr. Schweinfurth faults the ALJ's decision because it characterized the ligament injuries in his left knee as "'tears' when in fact they were catastrophic and complete ruptures with a complete loss of function that required construction with grafted tendons." (Pl.'s Br. 17.) Additionally, the ALJ failed to consider that the claimant's right knee also had a ruptured ligament. Defendant argues that the latter point was "referenced" in the ALJ's decision and seems to argue that it was not a severe impairment because "[t]he ALJ did not ignore the presence of this complaint" and because Mr. Schweinfurth "fails to assert how this alleged impairment significantly limited his physical ability to do basic work activities." As for the first point, Defendant says that "tears" is an accurate term because it was used in the medical records. (Def.'s Br. 12-13, ECF No. 16.)

Mr. Schweinfurth's argument is well taken. Failure to regard the ACL tear in the right knee as an impairment, let alone a severe impairment, is unexplained by the ALJ. Mere "reference" to an injury and "not ignor[ing]" an injury do not suffice. The ALJ should have explained why the right knee injury was not considered an impairment. The question as to the first point, whether the knee injuries were "tears," is really not focused on what to call the injuries as Defendant would suggest, but instead is directed at how severe they were and what their combined effect was on Mr. Schweinfurth's ability to function. Plaintiff is correct in pointing out that the ALJ's decision does not distinguish between a simple tear in a ligament and a "[c]omplete failure of the ACL, PCL, and MCL" in the same knee at the same time. (Tr. 267.) In evaluating whether Mr. Schweinfurth's condition satisfied the LOI, especially whether he could ambulate effectively, and in determining his RFC, the ALJ failed to consider the combination of the undeniably severe injuries to Mr. Schweinfurth's left knee, the ligament tear in the right knee, the fracture in the right foot, the delay in scheduling surgery on the left knee due to the deep vein thrombosis, the leg brace that he wore for over a year, the muscle atrophy and loss of stamina experienced by Plaintiff after effectively being immobilized for almost five months before his surgery, and his need to elevate his left knee periodically to reduce swelling. An additional point is that, of the three grafted tendons, one was harvested from Mr. Schweinfurth, according to the surgeon's report. (Tr. 267.) The ALJ's decision does not indicate that this additional surgical aspect was taken into account. Substantial evidence does not support the ALJ's decision.

Issue 2:  Consideration of Nonexertional Limitations in RFC

Plaintiff's next argument has been addressed somewhat in *Issue 1* when it was noted that Mr. Schweinfurth's stated need to elevate his left knee had not been considered in combination with other infirmities by the ALJ in determining the RFC. This is also considered in *Issue 3*. Additionally, the RFC relies upon state disability determination opinions, rendered in April 2007 and August 2007, which concluded that Plaintiff's injuries were expected to heal by December

2007. (Tr. 13.) Those opinions were, of course, rendered prospectively, without the benefit of later medical records showing a more cautious approach to ambulation and a return to reasonably normal ambulation *after* the anniversary date of Plaintiff's accident. As well, the ALJ relied upon a note in the surgeon's records, on September 10, 2007: "He can soon switch to once a week on his rehab. I have cleared him to return to work. I recommended that he stick with a desk type job." (Tr. 252.) The ALJ said he gave "great weight" to this opinion. (Tr. 13.) Notably, this "opinion" does not address Plaintiff's RFC for full-time employment. It is reasonable to infer that the surgeon thought Mr. Schweinfurth would not be harmed by a desk job, but such an opinion does not address his ability to ambulate effectively or the stamina required for a full-time job. Nor does it address his need to elevate his leg or his need to have therapy appointments. The ALJ could have recontacted the surgeon to ask for clarification, but did not. Accordingly, the RFC is not supported by the record.

Issue 3: Credibility Determination

It is within the province of the finder of fact to determine the credibility of witness testimony and the weight to be assigned to it. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). However, the credibility determination must be supported by substantial evidence. *See* SSR 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). Here, the ALJ found Mr. Schweinfurth not credible as to the physical limitations he claimed to have from December 13, 2006, to December 20, 2007. (Tr. 12-13.)

The ALJ, in setting forth his findings of fact and his reasons for disbelieving Mr. Schweinfurth made significant errors. First, the ALJ stated that Plaintiff had testified he started working as an editor for a publisher in October 2007. (Tr. 12.) That date would have been well before the end of the closed disability period sought by Plaintiff and, if true, would have been persuasive evidence of a lack of disability. In actuality, however, Mr. Schweinfurth testified that he began working in this position in February 2008, well after the last day of disability sought. (Tr. 32.) Next, the ALJ indicated his reliance on an inconsistent statement by Plaintiff in a document entitled Disability Report – Appeals dated October 11, 2007. (Tr. 13.) No such document exists in the administrative record, and Defendant has not moved to correct the record. Plaintiff has theorized that perhaps the ALJ was referring to a document dated August 29, 2007, filed by his counsel in connection with his request for a hearing. (Pl.'s Br. 13.) Plaintiff's counsel has said that he mistakenly included in that document information that was incorrect because it was outdated. However, even that document is not part of the administrative record. Even if it were, the explanation offered by Plaintiff's counsel, as an officer of the court, for the mistake can be accepted in good faith. The ALJ did not question Mr. Schweinfurth or his counsel about it at the hearing, and if it were important, he should have done so.

The ALJ also noted that the surgeon's notes from June 2007 indicate that Plaintiff was bearing full weight "for short distances in his hinged brace lock in full extension." (Tr. 13.) That bit of evidence seems to raise more questions than provide answers. How long was the "short distance"? What is one's degree of ambulatory ability while wearing a leg brace locked so that the knee does not bend? Another error was the ALJ's finding that Mr. Schweinfurth was cleared in November 2007 to ambulate outside his home without his brace. (Tr. 13.) In fact, the surgeon only cleared him to walk around his house without his brace in November 2007 (Tr. 250), a place described by Plaintiff as an apartment approximately 1000 square feet in size (Tr. 173). He was not cleared to ambulate outside his home without a brace until December 20, 2007, as long as the weather was not inclement. (Tr. 248.)

The ALJ noted the testimony given by Mr. Schweinfurth's mother, Gretchen Mour (Tr. 13), but did not note that her testimony corroborated her son's testimony. No determination was made as to the credibility of Ms. Mour's testimony. The Court has reviewed the record and finds the ALJ's credibility determination unsupported by substantial evidence. Because the credibility determination is in error, the RFC and the hypothetical question posed to the vocational expert based thereon are also in error.

In short, the ALJ's decision is based upon key pieces of evidence that are either nonexistent, contradicted by the record, or of dubious probative value. With nothing left to support the decision, it is clearly in error. No reason exists not to award benefits for the period of disability from December 13, 2006, to December 20, 2007. It will be so ordered.

## Conclusion

For the foregoing reasons, the Court will enter a separate order REVERSING the agency's decision, GRANTING Plaintiff's Motion for Summary Judgment/Petition for Review of Social Security Commissioner's Decision, and DENYING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge

JKB/jh